UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − − − − − −x

SOLOMON SHARBAT,                              Docket No.:  **1:17-CV-04776**

        Plaintiff,

    ~ against ~

CHAIM MUSKAT;
STAR FINANCIAL LLC; and
SEPHARDIC TORAH AND
RETURN CENTER, INC.,

        Defendants.

− − − − − − − − − − − − − − − − − − − − − −x

## NOTICE OF REMOVAL

       Pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446; and 9 U.S.C. § 205, the Defendants CHAIM MUSKAT, STAR FINANCIAL LLC, and SEPHARDIC TORAH AND RETURN CENTER, INC., do hereby respectfully file this Notice of Removal of the above-captioned matter from the Supreme Court of the State of New York, County of Queens, to the United States District Court for the Eastern District of New York.  The Defendants' Petition for Removal is based on the following grounds:

## BASIS FOR JURISDICTION

       1.    The United States District Court for the Eastern District of New York has original jurisdiction over this matter under 28 U.S.C. § 1332(a)(2), there being complete diversity between the citizenship of the Plaintiff and Defendants, and being

that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, as further described below.

2.     The United States District Court for the Eastern District also has jurisdiction over this matter pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1331, because the subject matter of the underlying proceeding relates to an arbitration award falling under a treaty of the United States, specifically the Convention on the Recognition and Enforcement of Foreign Arbital Awards (also known as the New York Convention).

3.     This lawsuit is therefore removable from the Supreme Court of the State of New York for the County of Queens to the United States District Court for the Eastern District of New York.

## TIMELINESS OF REMOVAL

4.     According to the Verified Petition of Jason Lowe, of counsel to Sarfaty & Associates, P.C., attorneys for Plaintiff SOLOMON SHARBAT, on or about July 20, 2017, the Plaintiff filed the Verified Petition in this matter in the Supreme Court of the State of New York, County of Queens under Index No. 7436/2017.

5.     A copy of the Plaintiff's Notice of Petition, Verified Petition to Confirm Arbitration Award, Verification, and all attached Exhibits are annexed to and made a part of this Notice of Removal as **Exhibit A**.

6.     On July 27, 2017, CHAIM MUSKAT was personally served with the Notice of Petition, Verified Petition to Confirm Arbitration Award, Verification and attached Exhibits.

7.     The time within which CHAIM MUSKAT, STAR FINANCIAL LLC, SEPHARDIC TORAH AND RETURN CENTER, INC. are required to file a Notice of Removal of this action to this Court has not expired.  *See* 28 U.S.C. § 1446 (b)(1).  No proceedings have been held before the Supreme Court.

### ALLEGATIONS IN THE
### <u>VERIFIED PETITION TO CONFIRM ARBITRATION AWARD</u>

8.     The Plaintiff's Verified Petition to Confirm Arbitration Award arises from what Plaintiff alleges was an agreement between the parties to submit claims with respect to certain shares in Oral Cancer Prevention International (OCPI) and other matters to arbitration.

9.     Plaintiff alleged that he is a resident of the State of Israel. Verified Petition at ¶ 1.

10.     Plaintiff further alleged that the Respondents are resident in and based in Queens, New York. Verified Petition at ¶¶ 2 – 4.

11.     Plaintiff alleged after a dispute arose, Plaintiff and Respondents agreed to submit their claims to binding arbitration.  Verified Petition at ¶ 6.

12.     The Plaintiff further alleged that the arbitration resulted in an award more than $75,000.00, which, he alleged, was delivered to the Respondents.  Verified Petition at ¶¶ 9 and 14.

13.     Plaintiff asked the court to: "(1.) confirm the Arbitration Award [*sic*] pursuant to CPLR 7510; (2.) direct entry of judgment upon the arbitration award

[*sic*]; and such further relief and [*sic*] th[e] Court deems just and proper". Verified Petition at ¶ 18.

## DIVERSITY JURISDICTION

14.     At all times relevant to this Verified Petition, the Defendant Chaim Muskat was a citizen of the United States and domiciled in Queens County, New York.

15.     At all times relevant to this Verified Petition, the Defendant STAR Financial LLC was a limited liability company organized and existing under New York law, which maintained its primary offices at Queens County, New York.

16.     At all times relevant to this Verified Petition, the Defendant Sephardic Torah and Return Center, Inc., was a Not-for-Profit Corporation organized and existing under New York law which maintained its primary offices at Queens County, New York.

17.     Upon information and belief, Plaintiff Solomon Sharbat is resident of and domiciled in the Tel Aviv-Jaffa Municipality, in the District of Tel Aviv, in the State of Israel and he is a citizen solely of the State of Israel.  Some, but not all, of the basis for the Defendants' information and belief about Sharbat's citizenship and residence is explained below.

18.     In discussing the basis for Defendants' information and belief about Sharbat's residence and citizenship, this Notice of Removal makes references to filings in various lawsuits to which Sharbat and his single member limited liability companies have been a party.  According to an affidavit recently submitted to the Supreme Court of Kings County:

> "[Sharbat] as and is a highly litigious individual that has been embroiled over the past decade in numerous state and federal lawsuits involving allegations of fraud, breach of contract and other forms of business misconduct. (Annexed hereto as Exhibit C is a true copy of a "Westlaw" printout that reflects twenty-nine (29) separate state and federal case filings involving Mr. Sharbat and/or his various companies since 2003.)"

Affidavit of Defendant Seth Weiser at ¶ 10, in *Sharbat v. Weiser*, Index #161462/2014, Docket #148 (S.Ct. Kings Co. March 31, 2017). A copy of the relevant portions of the Weiser Affidavit with the relevant exhibit that lists Sharbat's extensive litigation history in the United States is annexed to and made a part of this Notice of Removal as **Exhibit B**).

19. This Notice of Removal makes reference to these various filings in order to explain Mr. Sharbat's citizenship and domicile history and how his citizenship and domicile has changed over the years as is relevant to diversity jurisdiction in this case. This Notice of Removal will also note and explain the various State and Federal Court rulings, which have made procedural – but not substantive factual findings – about Sharbat's citizenship and residence over the past several years.

### i. 2000s – Sharbat Domiciled in Queens and U.S. Citizen Only

20. It is undisputed that in through the 2000s, Sharbat was resident in New York and a citizen only of the United States. For example in 2008, Sharbat alleged that:

> "1.      Plaintiff Solomon Sharbat ("Mr. Sharbat") is a resident
> of the State, city and County of Queens."

Complaint in *Sharbat, et ano. v. Law Offices of Michael B. Wolk, P.C., et ano.*, Index No. 2008/600151, (S.Ct. N.Y. County Jan. 17, 2008).  A copy of the relevant portions of the *Sharbat v. Law Offices* Complaint alleging his residence in Queens, New York is annexed to and made a part of this Notice of Removal as **Exhibit C**.

> 21.      In 2009 Sharbat again alleged that:

> "30.      Solomon Sharbat ("Sharbat") is an individual who resides in the
> State of New York."

Counterclaim in *Harstein v. Sharbat, et al.,* Index #09-cv-9799 (S.D.N.Y. Dec. 7, 2009).  A copy of the relevant portions of the *Harstein v. Sharbat* Counterclaim alleging his residence in Queens, New York, is annexed to and made a part of this Notice of Removal as **Exhibit D**.  In the *Harstein* action, Sharbat further detailed as follows:

> "3.      . . . [W]hile I recently visited Israel and I have family there, I never intended to stay in Israel and I returned home to New York more than one month ago.  Simply stated, I am now and have always been a resident and domiciliary of the State of New York and I do not plan on re-locating to another state much less another country.  My home is in Queens ([address redacted]) where I was born and raised.  I attended Queens College in the State of New York.  I have had offices in midtown Manhattan for years from which I operate all my businesses and companies.  In fact, just this past August, I assigned a lease on behalf of my company, Solomon Capital Advisors LLC, to rent office space at [address redacted] through July 2011 . . . .

> "4.      Thus, any notion that I have fled the jurisdiction or plan to do so is preposterous as I am a native New Yorker with both roots and future plans here . . . .

"7.    Moreover, I am not an Israeli citizen and I have never taken any steps to become a citizen of Israel or any other country.  I am a citizen of the United States and do not have and have never had, dual citizenship in any other country.  I have never leased office space in Israel or any other country (or state, for that matter) and I do not own a home in Israel and have never lived anywhere outside New York City.  I maintain a United States passport and I do not have a passport from Israel or any other country aside from the United States.".

Affidavit of Solomon Sharbat in *Harstein v. Sharbat, et al.,* Index #09-cv-9799 (S.D.N.Y. December 16, 2009).  A copy of the Affidavit of Solomon Sharbat is annexed to and made a part of this Notice of Removal as **Exhibit E**.

ii.    **December 2009 – Sharbat Moves to Israel**
       **Claims He Remained Domiciled in New York**

22.    According to Sharbat, at some time between December 16 and December 31, 2009, Sharbat moved to Israel, while continuing to remain domiciled in and a citizen of New York State for purposes of 28 U.S.C. § 1332.  Sharbat alleged:

"2.    Plaintiff [, Sharbat,] does not contest that in 2009 [Sharbat] moved to Israel on an interim basis, and that during 2010 [Sharbat] applied for permanent immigrant status."

Reply Declaration of Shlomo Sharbat in *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital, LLC et al.,* Index #13-cv-3619 (S.D.N.Y. Dec. 10, 2013).  A copy of the Reply Declaration in *United v. Solomon* is annexed to and made a part of this Notice of Removal as **Exhibit F**.

23.    As late as August 30, 2010 Sharbat continued to allege that:

"1.    Plaintiff SOLOMON SHARBAT ("SHARBAT") is an individual residing in New York State."

Complaint in *Sharbat, et ano. v. Butler, et ano.*, Index #10-cv-6455 (S.D.N.Y. August 30, 2010).  A copy of the *Sharbat v. Butler* Complaint alleging his residence in New York is annexed to and made a part of this Notice of Removal as **Exhibit G**.

### iii.      August 31, 2010 – Sharbat Emigrates to Israel

24.     Sharbat alleged that he emigrated to Israel on what must have been August 31, 2010.  After alleging on August 30, 2010 that he was resident in New York (*See* **Exhibit G**), Sharbat later alleged:

> "2.    [Sharbat] immigrated to Israel from New York in August 2010.  [Sharbat] reside[s] in an apartment in Tel Aviv with [his] elderly parents, nearby extended family.

> "3.    In 2010 [Sharbat] became an Israeli citizen (copy of [Sharbat's Israeli passport attached as Exhibit A). [Sharbat] vote[s] in Israel.

> "7.    [Sharbat] ha[s] no active ties with the US (other than business associates with whom [Sharbat] speak[s] over the telephone or via email)."

Declaration of Shlomo Sharbat in *United Torah Education and Scholarship Fund, Inc. v. Sharbat*, Index 13-cv-3619 (S.D.N.Y. Nov. 21, 2013).  A copy of the Declaration of Shlomo Sharbat in *United v. Sharbat* is annexed to and made a part of this Notice of Removal as **Exhibit H**.

25.     Sharbat similarly alleged:

> "8.     . . .  I, [Sharbat,] had moved to, and have been resided in Tel Aviv, Israel for at least two years, with the intent to permanent stay in Israel."

"9.     The Court should note that since my move, I have become an Israeli citizen have not visited the United States and have not stepped foot in the Kessel St. house at any time."

Affidavit of Solomon Sharbat in *Sharbat v. Law Offices of Michael B. Wolk, P.C., et ano.*, Index No. 600151-2008 (S.Ct. N.Y. County May 3, 2012).   A copy of the Affidavit of Solomon Sharbat in *Sharbat v. Law Offices* is annexed to and made a part of this Notice of Removal as **Exhibit I**.[1]

26.     Sharbat later alleged:

"9.     [Sharbat is] an Israeli citizen first gaining citizenship in or around September [*sic*] 2010."

Affirmation of Solomon Sharbat in *Sharbat v Weiser,* Index No. 161462/2014 (S.Ct. N.Y. County April 12, 2017).    A copy of the Affirmation of Solomon Sharbat in *Sharbat v. Weiser* is annexed to and made a part of this Notice of Removal as **Exhibit J**.

---

[1]     The Appellate Division of the Supreme Court of New York, First Department did not accept Sharbat's claim to have relocated away from Queens, New York.

"Given the claims made by Sharbat in a prior proceeding that as to his Queens residency, which conflict with his claim in the instant proceeding that he has been living in Israel since, Sharbat's self-serving rebuttal of the process server's affidavit was not believable and was insufficient to support a defense of lack of personal jurisdiction based on improper service of process or raise issues of fact requiring a traverse hearing."

*See* Sharbat, et al. v. Law Offices of Michael B. Wolk, P.C., et al., 993 N.Y.S.2d 961, 962 (1st App. Div. 2014)(citations omitted).   The Defendants, for purposes of this Notice of Removal do not dispute Sharbat's allegation that Sharbat relocated to Israel some time between December 16 and December 31, 2009; and his allegation that he permanently moved to Israel on August 31, 2010.

iv.    **Circa 2010 – Sharbat Domiciled Overseas**
       **With Intent to Return to U.S. When The "Coast Was Clear"**
       **And Maintained His American Citizenship**

27.    In 2013, after Sharbat's emigration overseas, Sharbat was named as a Defendant in *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital LLC, et al.*, Index #13-cv-4330 (C.D.Cal.).  Sharbat moved to dismiss the action, which was based on diversity jurisdiction.  Sharbat argued that he was a dual-citizen of Israel and the United States and because he had no domicile in any state, there was no complete diversity of citizenship. Memorandum of Points and Authorities, *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital, LLC, et al.*, Index #13-cv-4330 (C.D.Cal. Nov. 19, 2013). A copy of Sharbat's Memo is annexed to and made a part of this Notice of Removal as **Exhibit K**.

28.    United strategically chose to not factually challenge the issue of Sharbat's residence and citizenship arguing that *quasi in rem* jurisdiction in federal court over attachment actions regardless of citizenship. A copy of United's opposition to the Motion to Dismiss is annexed and made a part of this Notice of Removal as **Exhibit L**.[2]

---

[2]    In deciding a later Motion to Renew and Reargue, Justice Fischer explained that:

   "[t]he Court did not grant the motion to dismiss based on the lack of opposition, but on the merits of the diversity issue.  Indeed the Court relied on the allegation in United Torah's Complaint that Sharbat "is now domiciled in Israel," (Compl. ¶ 1) – a judicial admission United Torah now apparently wishes to dispute."

   Order DENYING Plaintiff's Motion to Vacate Judgment of Dismissal, *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital, LLC, et al.*, Index #13-cv-4330 (C.D.Cal. Feb. 18, 2014). A copy of the Order is annexed to this Notice of Removal as **Exhibit M**.

29.     With no factual issue raised with respect to Sharbat's citizenship, Judge Fischer issued a short opinion which found that accepting the parties' unchallenged representations about Sharbat's citizenship and domicile as of November 2013 as true, diversity jurisdiction did not exist. A copy of Judge Fischer's Memorandum dismissing the Complaint for lack of diversity jurisdiction is annexed to and made a part of this Notice of Removal as **Exhibit N**.

30.     In a parallel proceeding captioned, *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital LLC, et al.*, Index #13-cv-3619 (S.D.N.Y.), Sharbat also moved to dismiss the action for lack of diversity jurisdiction.  As in the California case, Sharbat argued that he was a dual-citizen of Israel and the United States and because he had no domicile in any state, there was no complete diversity of citizenship. Memorandum of Law in Support of Motion to Dismiss, *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital, LLC, et al.*, Index #13-cv-3619 (S.D.N.Y. Nov. 21, 2013)(*citing Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). A copy of Sharbat's Memo is annexed to and made a part of this Notice of Removal as **Exhibit O**.

31.     United responded with a series of Affidavits that alleged *inter alia* that:

> "3.    .  .  . Sharbat was heavily involved with a company known as SpongeTech. . . . The SEC suspended trading in Spongetech stock on Oct. 5, 2009, due to questions about the accuracy of the company's press releases and SEC filings.  See Ex. A. It then became public knowledge in the securities industry that the SEC and U.S. Attorney were involved in an intense investigation of Sponge Tech's stock

trading activities and that arrests were expected to follow shortly.  Ultimately, as reported in the media, in May 2010, the two principals of Sponge Tech Inc., Retter and Moskowitz, and a number of other individuals were arrested and indicated for major stock fraud. See Ex. B.

"4.    When I called Sharbat to find out what was going on, I was surprised to learn from him that he had already left to Israel several months before the arrests, almost boasting as to his prowess in avoiding any charges or questioning.  He told me that he was not afraid of getting indicted but rather of being held and interrogated as a material witness, and forced to tell what he knows.  At the time, the purpose of Sharbat's sudden disappearance to Israel was not only common knowledge in industry circles, but Sharbat himself has admitted that fact to me multiple times over the phone.  He specifically stated to me that he can't wait to come back to New York, which he expects to do, as soon as his SEC lawyers advise him it was safe to do so, when all pending investigations were closed.

"5.    I vividly recall him sending me an e-mail on April 5, 2013, with a copy of a newspaper article entitled "FBI: 7 Arrested in "Pump and Dump" Penny Stocks Scheme" and then discussing the article with me over the phone.  Sharbat explained that these arrests jusitifed his hiding out in Israel until the "coast was clear" as well as his extreme caution in coming back to N.Y. until the Sponge Tech affair was dead and buried. See Ex.C hereto."

Declaration of Michael Caridi in *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital LLC, et al.,* Index No. 13-cv-3619 (S.D.N.Y. Dec. 4, 2013).   A copy of the Declaration of Michael Caridi in *United v. Solomon* with all relevant exhibits is annexed to and made a part of this Notice of Removal as **Exhibit P**.

32.    Another Affiant alleged:

"3.    When I first met Sharbat in Israel, I though he was just vacationing there or on an extended stay but that he lived in New York.  I was surprised when he told me he actually lived

in his parents' apartment in Tel Aviv, Israel, but did not say anything.  After I got to know him a little better, we were discussing over dinner people in the United states who had committed crimes and fled to countries like Israel to try and hide there to avoid prosecution.  I intuited this about him and so I asked him point blank: "so why are you hiding out here in Israel?"

"4.    He responded that he had 'some problems' with the SEC and he could be risking arrest upon return to the United States, which he wanted to avoid at all costs.  I was surprised as I thought I told him that I thought he had become an Israeli citizen.  He replied that he was bored in Israel, that he could not wait to go back "home," and that he was staying here only for a short time until 'the heat was off.'"

Declaration of Jason Gold in *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital LLC, et al.,* Index No. 13-cv-3619 (S.D.N.Y. Dec. 4, 2013).   A copy of the Declaration of Michael Caridi in *United v. Solomon* with all relevant exhibits is annexed to and made a part of this Notice of Removal as **Exhibit Q**.

33.    Judge Sullivan ruled that the matter having been decided in California, United was claim precluded from now claiming that diversity jurisdiction exists.  His opinion recognized the strategy of United to not object on the merits to Sharbat's citizenship and domicile in the California case, did not prevent claim preclusion and the New York federal Court <u>did not</u> engage in any fact-finding:

"Third, United Torah's view of the issue preclusion would lead to rank gamesmanship.  If factual and legal findings made by a court in the grant of a Rule 12(b)(1) motion lacked preclusive effect anytime the plaintiff failed to file an opposition brief, the plaintiff could forum shop by filing an opposition brief only when it sensed that a particular court would be receptive to its jurisdictional arguments.  Under such a rule, defendants would be forced to undertake the time and expense of repeatedly filing identical Rule 12(b)(1)

motions without ever reaping the benefits of the court's grant of its motions, even if that grant was based on the merits of the jurisdictional dispute.  This is untenable"

Decision dismissing Complaint, *United Torah Education & Scholarship Fund, Inc. v. Solomon Capital LLC, et al.,* Index No. 13-cv-3619 (S.D.N.Y. Aug. 14, 2014) affirmed Uni*ted Torah Education & Schoalrzhip Fund, Inc. v. Solomon Capital LLC, et al.*, No. 14-cv-3454 (2d Cir. Oct. 30, 2015).  A copy of the Decision is annexed to and made a part of this Notice of Removal as **Exhibit R**.

### iv.    Some Time Between 2010 – 2015 <u>Sharbat Abandons American Citizenship</u>

34.    Upon information and belief, at some time between 2010 and 2015, Sharbat abandoned his American citizenship.  The basis for Defendants' information and belief includes, but is not limited to, the fact that in many of his prior lawsuits – some of which are described above – Sharbat consistently referred to his Queens residence and, after he emigrated, to his American citizenship.

35.    However in Sharbat's most recent lawsuits he no longer refers to his Queens residence and American citizenship.   For example in November 2014, Sharbat alleged as follows:

"2.    The Plaintiff, SOLOMON SHARBAT, is a resident of the State of Israel"

Complaint in, *Sharbat v. Weiser*, Index #161462/2014 (S.Ct. Kings Co. Nov. 18, 2014).  A copy of the Complaint is annexed to and made a part of this Notice of Removal as **Exhibit S**.

36.    In April 2016, Sharbat alleged:

"2.    Plaintiff SCLLC is a New York limited liability company with a principal place of business in Tel Aviv, Israel."

"4.    Plaintiff Sharbat is the managing member of SCLLC and a former resident of New York.   He now maintains his residence in Tel Aviv, Israel."

Complaint in, *Solomon Capital, LLC v. Lion Biotechnologies, Inc.*, Index #651881/2016 (S.Ct. Kings Co. April 8, 2016).  A copy of the Complaint is annexed to and made a part of this Notice of Removal as **Exhibit T**.

37.    Where convenient and necessary to avoid federal jurisdiction, Sharbat has sometimes alleged he is a citizen of the United States including in:

(i.)    *Sharbat v. Israel Venture Partners*,
       Index No. 154454/2015 (S.Ct. N.Y. County)

(ii.)    *Sharbat v. AGS Capital Group, LLC*,
        Index No. 652386/2015 (S.Ct. N.Y. County)

(iii.)    *Sharbat v. Butler*,
         Index No. 652884/2015 (S.Ct. N.Y. County)

(iv.)    Solomon Capital LLC v. Shmuel Dovid Hauck,
        Index No. 653675/2015 (S.Ct. N.Y. County)

However such "self-serving" allegations by Sharbat (*See Sharbat, et al. v. Law Offices of Michael B. Wolk, P.C., et al.*, 993 N.Y.S.2d 961, 962 (1st App. Div. 2014)(describing Sharbat's self-report of his residential and citizenship status as not credible and "self-serving")) are plainly contradicted by later allegations by Sharbat and the substantive position that Sharbat has taken in litigation that he has no connection to the United States.

38.     For example, leaving aside the factual allegations in his various Complaints, in substance Sharbat took the position in a lawsuit that he has no connection to New York or the United States and that only Israeli law should apply to him with respect to certain legal matters, including usury.  *See, e.g.*, Memorandum of Law in *Sharbat v. Weiser*, Index #161462/2014 (S.Ct. Kings Co. April 25, 2017).  A copy of the Memorandum of Law in *Sharbat v. Weiser* is annexed to and made a part of this Notice of Removal as **Exhibit U**.

39.     In addition, Sharbat's claims of American citizenship are chronologically prior to his later claim of exclusive Israeli identity.  The most recent suit (aside from this case) was filed in April 2016, which dropped any reference to his New York residence or American citizenship. (*See above* ¶ 36).

40.     In summary, according to the public record and as alleged by Sharbat himself the following is the history of his citizenship, residency, and domicile:

*[Remainder of Page Intentionally Left Blank]*

|  | **Sharbat's Citizenship** | **Sharbat's Domicile** | **Sharbat's Residence** |
|---|---|---|---|
| **2000s**<br>See infra ¶¶ 20 – 21<br>Exhibits C – E | **American Citizen Only** | **New York State** | **Queens County, NY** |
| **Dec. 2009**<br>See infra ¶¶ 22 – 23<br>Exhibits F – G | **American Citizen Only** | **New York State** | ***Moves to*<br>Tel Aviv, Israel** |
| **August 2010**<br>See infra ¶¶ 24 – 26<br>Exhibits H – J | **Dual American-*Israeli* Citizenship** | ***Changes to*<br>Israel** | **Tel Aviv, Israel** |
| **Circa 2010**<br>See infra ¶¶ 27 – 33<br>Exhibits K – R | **Dual American-Israeli Citizenship** | **Israel**<br>*(Alleged intent to move back to New York – Exh. P & Q)* | **Tel Aviv, Israel** |
| **2014 -**<br>See infra ¶¶ 34 – 39<br>Exhibits S – U | ***Israeli Citizen Only*** | **Israel** | **Tel Aviv, Israel** |

41.     In the context of an individual whose citizenship and residency has been in flux, and who has used his residence in a sharp way (*See above* ¶¶ 23 – 24, describing Sharbat's filing of a lawsuit on August 30, 2010, with a claim of Queens residency and American citizenship, thus defeating diversity jurisdiction, a day before allegedly emigrating overseas on August 31, 2010) Sharbat's prior self-serving claims about his citizenship in 2015 should not be taken as the final word.  Especially when

Sharbat's actual final words in 2016 and 2017 pointedly <u>do not</u> allege American citizenship or New York residency.

42.     Because Sharbat is resident in the Tel Aviv-Jaffa Municipality, in the District of Tel Aviv, in the State of Israel and he is a citizen solely of the State of Israel; and the Defendants are New York residents the jurisdictional requirements of complete diversity exists in this case.

43.     Furthermore, to the extent that Sharbat may claim in this litigation that he is still a citizen of the United States – a claim that has never been factually substantiated or decided in any case involving the parties in this case and is inconsistent with claims made by Sharbat in his most recent cases that he has no connection to the United States – the Defendants should be entitled to immediate Discovery (including interrogatories and depositions of Sharbat in this District) to determine Sharbat's true citizenship for purposes of diversity jurisdiction in this case.

44.     Furthermore, even if the Court were to find that contrary to his most recent representations in various courts, Sharbat has not formally surrendered his American citizenship, Sharbat has in fact expatriated.  To wit, since his emigration Sharbat has never traveled in the United States, never used his American passport, and does not currently hold himself out as an American citizen.  *Contrast Action SA v. Marc Rich & Co., Inc.*, 951 F.2d 504, 506 (2d Cir. 1991)(finding that Marc Rich had travelled in the United States on his American passport subsequent to federal grand jury investigation and listed himself as American on commercial registers) and therefore Sharbat has *de facto* and *de jure* expatriated and abandoned his American citizenship.

45.     Further, even if the Court were to find that contrary to Sharbat's most recent representations in various courts that Sharbat remains a citizen of the United States, then while it is the practice in this Circuit for dual-nationals overseas to have no State citizenship and no ability to claim diversity citizenship with a citizen of a State, neither the Supreme Court nor the plain language of the statute have explicitly stated such a rule and the Plaintiff would respectfully urge a change of practice in the Second Circuit to address unique circumstances such as this case where a dual-national Plaintiff moves permanently overseas to avoid jurisdiction with no intent or ability to return, so that dual-citizens should be treated as a diverse party for purposes of 28 U.S.C. § 1332.

## JURISDICTION UNDER THE FEDERAL ARBITRATION ACT

46.     This Court also has jurisdiction over this underlying action pursuant to the removal provisions of Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201, et seq., which implements the Convention on the Recognition and Enforcement of Foreign Arbitral awards (the "New York Convention").

47.     Chapter 2 of the FAA provides that the "[t]he [New York] Convention [on the Recognition and Enforcement of Foreign Arbitral awards] shall be enforced in the United States courts in accordance with this chapter." *See* 9 U.S.C. § 201.  As described in more complete detail below, Chapter 2 of the Federal Arbitration Act provides for original federal subject matter jurisdiction over this case.

48.     Furthermore, the New York Convention provides for a right of removal:

"Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.  The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal"

9 U.S.C. § 205; see also 28 U.S.C. § 1331 (providing for removal based on "civil actions arising under the . . . treaties of the United States").

49.    Whether an award falls under the New York Convention is governed by Section 202 of the Federal Arbitration Act, which provides:

"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.  An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.  For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States."

9 U.S.C. § 202.

50.    As described below, in this case the arbitration agreement and Psak Din Zmani / Interim Award falls under the New York Convention because it arises out of a commercial relationship.  Furthermore, the underlying relationship involves

property located abroad, envisages performance and enforcement abroad, and has other reasonable relations with a foreign state.

51.     The arbitration agreement and award arises under a commercial relationship.  The agreement was made by and between Chaim Muskat, personally and behalf of various entities.  The other party to the arbitration agreement was an individual Solomon Sharbat, personally and his many companies, trusts, and other entities with which he is involved.

52.     The primary arbitration agreement was about the OCPI shares and related matters – addressing a commercial referral relationship.

53.     While the New York Convention is said to apply to "the recognition and enforcement of . . . arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought" (New York Convention, Art. I(1)),

> "[t]he The Second Circuit has construed the scope of 'awards not considered as domestic awards' broadly, explaining that such awards are those "made within the legal framework of another country, e.g., pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983). The Second Circuit has also approvingly quoted the Seventh Circuit's view that 'any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention.' Jain v. de Méré, 51 F.3d 686, 689 (7th Cir. 1995), quoted in *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) ("Alghanim")."

Hess Corp. v. Dorado Tanker Pool, Inc., Index No. 14-cv-6412 (S.D.N.Y. March 4, 2015)(Buchwald, District Judge Naomi Reice).

54.     It is undisputed in this case that Sharbat is domiciled outside the United States in a jurisdiction that is a state party to the New York Convention (*See infra* ¶ 24 – 26) and that at least one corporate party to the arbitration is based outside the United States (*See infra* ¶ 36).  *See CBF Indústria De Gusa S/A v. Amici Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc*., 126 F.3d 15 (2d Cir. 1997).

55.     Furthermore, the particular arbitration forum to which the parties agreed to is not a wholly domestic forum.  The Arbitration Agreement involved an overseas-based arbitration Forum (See Exhibit V, which is a translation of what Sharbat alleged to be the Arbitration Agreement; and Exhibit W, which is a translation of the Wikipedia article about the Bais Din Tzedek of Bnei Brak under whose "direction" the arbitration forum operates).

56.     In addition, the Plaintiff whose information necessary for a decision on this case, physical presence, personal domicile and the domicile of all his companies, is physically located overseas, in the jurisdiction of a state party to the New York Convention.

57.     Since the underlying action is one of which the Court has original jurisdiction under 9 U.S.C. § 203 and 28 U.S.C. § 1331, this action may be removed by this Court by the Defendant under 9 U.S.C. § 205 and 28 U.S.C. § 1441.

## NO ADMISSION

58.    This Notice of Removal is submitted without admission that the Verified Petition has any basis in law, fact, or *din*, and without waiving any of the Defendants' defenses, claims, or counterclaims including, but not limited, to the Defendants' challenge to the Verified Petition to Confirm, the Defendants' position on vacating the Award and the Arbitration Agreement, and all of the Defendants' potential defenses and counterclaims.

59.    Defendants reserve the right to amend and/or supplement this Notice of Removal.

## SERVICE

60.    Concurrent with the filing of this Notice of Removal, Defendants are serving this Notice of Removal upon Plaintiff's counsel and will promptly file a copy of this Notice with the Supreme Court of the State of New York, New York County.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, notice is given that this action is removed from the Supreme Court of the State of New York, Queens County to the United States District Court for the Eastern District of New York.

Dated:     Fresh Meadows, New York
           August 15, 2017

                              Respectfully Submitted,

                              Baruch S. Gottesman, Esq.
                              185-12 Union Turnpike
                              Fresh Meadows, NY 11366
                              *Attorney for Defendants*

TO:    Jason Lowe, Esq.
       SARFATY AND ASSOCIATES, P.C.
       1 North Sherri Lane
       Wesley Hills, NY 10977
       *Attorney for Plaintiff Solomon Sharbat*