UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
SOLOMON SHARBAT,

  Petitioner,      **MEMORANDUM & ORDER**

-against-        17-CV-4776(KAM)(CLP)

CHAIM MUSKAT; STAR FINANCIAL LLC;
and SEPHARDIC TORAH AND RETURN
CENTER, INC.,

  Respondents.
--------------------------------X
**MATSUMOTO, United States District Judge:**

    Petitioner Solomon Sharbat ("petitioner") commenced

the instant action by filing a petition (the "Confirmation

Petition") dated July 20, 2017 in the New York Supreme Court,

Queens County, seeking confirmation of an arbitration award.

(*See* Confirmation Petition, ECF No. 1-1.)  On August 15, 2017,

respondents Chaim Muskat, Star Financial LLC, and Sephardic

Torah and Return Center, Inc. (collectively, "respondents")

removed the action to this court, invoking both diversity and

federal question jurisdiction.  (Notice of Removal, ECF No. 1,

¶¶ 3-5.)

    Presently before the court are cross-motions by the

parties.  Respondents' motion (the "Dismissal Motion," ECF No.

14) seeks dismissal of the Confirmation Petition under Federal

Rule of Civil Procedure ("Rule") 12 for lack of federal subject

matter jurisdiction, failure to state a claim upon which relief

1

can be granted, and failure to join necessary parties.  In
support of the Dismissal Motion, respondents have submitted a
memorandum of law ("Resp. Mem.," ECF No. 14-1), declarations of
Baruch S. Gottesman, Esq. (ECF No. 14-2), and respondent Chaim
Muskat ("Muskat Decl.," ECF No. 14-15), exhibits to the
declarations, and a reply memorandum.  (ECF No. 17.)  Petitioner
opposes the Dismissal Motion and has submitted a memorandum of
law ("Pet. Opp.," ECF No. 16), as well as a declaration of
Eliahu Sarfaty, Esq.  ("Sarfaty Opp. Decl.," ECF No. 16-1) and
exhibits thereto.

Petitioner's motion (the "Subpoena Motion," ECF No.
18) seeks enforcement of a subpoena under section 7 of the
Federal Arbitration Act (the "FAA").  In support of the Subpoena
Motion, petitioner has submitted a memorandum of law ("Pet.
Mem.," ECF No. 18-1), another declaration by Mr. Sarfaty
("Sarfaty Subpoena Decl.," ECF No. 18-2) and exhibits thereto,
and a reply memorandum.  (ECF No. 21.)  Respondents oppose the
Subpoena Motion and have submitted an opposition memorandum (ECF
No. 19), and another declaration by Mr. Gottesman (ECF No. 20)
and exhibis thereto.

For the reasons set forth below, the court concludes
that the Confirmation Petition seeks to enforce a non-final
award and consequently must be dismissed without prejudice, and

that the Subpoena Motion seeks relief that is not available to petitioner as a matter of law and accordingly must be denied.

**BACKGROUND**

## I.   Parties

The Confirmation Petition asserts that petitioner is a resident of Israel, respondent Chaim Muskat is a resident of Queens, New York, respondent Star Financial LLC is a New York limited liability company "based in Queens," and respondent Sephardic Torah and Return Center, Inc. is a New York not-for-profit corporation also "based in Queens."  (Confirmation Petition ¶¶ 1-4.)  Respondents' Notice of Removal does not dispute any of the foregoing assertions (*see* Notice of Removal ¶¶ 14-17), but adds that, "[u]pon information and belief, [petitioner] . . . is a citizen solely of the State of Israel." (*Id.* ¶ 17; *see also id.* ¶¶ 20-40 (discussing various public records from other litigation matters and purported statements by petitioner in support of respondents' contention that petitioner is solely a citizen of Israel).)

The Confirmation Petition further asserts that petitioner and respondents "had business dealings together," and that "[a]fter a dispute arose, the [p]etitioner and [r]espondents agreed to submit their claims to binding arbitration."  (Confirmation Petition ¶¶ 5-6.)  Respondents'

notice of removal acknowledges the foregoing assertions and does not dispute them.  (*See* Notice of Removal ¶ 11.)

## II.  The Arbitration Agreement

Petitioner, together with certain entities with which he is affiliated and "any other entity that [he] has an ownership or control interest in," and respondents, together with "any other entity that [respondent Chaim] Muskat has an ownership or control interest in" are parties to an arbitration agreement (the "Arbitration Agreement") dated June 22, 2015. (*See* Arbitration Agreement, Sarfaty Opp. Decl., Ex. A, ECF No. 16-2, ECF pp. 1-2.)[1]  Pursuant to the Arbitration Agreement, the parties "agree[d] to submit to binding arbitration all the controversies (claims and counterclaims) between the[m] . . . including, without limitation . . . [c]laims on OCPI shares and related matters."  (*Id.* ¶ 1.)  The Arbitration Agreement does not explain what the "OCPI shares" are, but according to the Notice of Removal, they are shares in an entity named Oral Cancer Prevention International.  (Notice of Removal ¶ 8.)

---

[1]     The Arbitration Agreement is also annexed as Exhibit A to the Confirmation Petition (ECF No. 1-1, ECF pp. 6-7), and as Exhibit A to petitioner's August 23, 2017 letter responding to respondent's request for a pre-motion conference.  (ECF No. 11-1.)  Respondent Chaim Muskat asserts that the Arbitration Agreement that petitioner has presented to the court omits a full page and is "not a full and complete copy of the arbitration agreement between the parties" (Muskat Decl. ¶ 13), but respondents have not put the "full" arbitration agreement into the record.

The Arbitration Agreement provides for "the controversy [to be] heard and determined by a panel of any three arbitrators . . . of Maysharim Rabbinical Court," and that the arbitrators "may make their award based upon Din Torah, compromise, settlement, or any other way they wish to reach an agreement." (Arbitration Agreement ¶ 2.) Additionally, the parties agreed to "faithfully abide by and perform any interim or final award or decision rendered by the Arbitrators," and to "submit themselves to the personal jurisdiction of the courts of the State of New Jersey and/or New York for any action or proceeding to confirm or enforce a decree of the Arbitrators." (*Id* ¶ 5.)

The parties then proceeded to arbitration, and although the record before this court contains few details regarding those proceedings, it appears that the arbitral tribunal held more than one hearing. (*See* Sarfaty Opp. Decl. ¶ 4 (referring to "oral hearings in this matter"); Sarfaty Subpoena Decl. ¶ 4 ("I personally attended many hearings as part of the arbitration underlying this action.").)

### III. The Interim Decision

On May 3, 2017, the arbitration panel of three Rabbinical Court arbitrators (the "Bais Din") issued a "Psak Din Zmani/Interim Decision" (the "Interim Decision") in the parties'

dispute.  (*See* Interim Decision, Sarfaty Opp. Decl., Ex. B, ECF No. 16-2, ECF pp. 3-6.)[2]  Although the precise location from which the Bais Din issued the Interim Decision is not clear, both the Arbitration Agreement and the Interim Decision indicate that the Maysharim Rabbinical Court's office and one of its courtrooms are in Lakewood, New Jersey, and that it has another courtroom Brooklyn, New York.  (*See* Arbitration Agreement; Interim Decision.)  Consequently, the Interim Decision was issued within the United States.

The Interim Decision lists all parties to the Arbitration Agreement as parties to the arbitration proceedings. Specifically, the "Plaintiffs" are petitioner individually and on behalf of various specified entities affiliated with him, and "any other entity" in which petitioner had an "ownership or control interest."  (*See* Interim Decision.)  The "Defendants" are identified as respondent Muskat individually and on behalf of the remaining respondents and "any other entity" in which he had an "ownership or control interest.  (*Id.*)

The Interim Decision is divided into four "subjects": the "Sharbat Claim" (Subject "A"), the "OCPI Claim" (Subject

---

[2]     The Interim Decision is also annexed as Exhibit B to the Confirmation Petition (ECF No. 1-1, ECF pp. 8-10), although the copy annexed to the Confirmation Petition omits the Interim Decision's signature page. Additionally, the Interim Decision is annexed as Exhibit B to petitioner's August 23, 2017 letter responding to respondent's request for a pre-motion conference.  (ECF No. 11-2.)

"B"), "Defendant Loans to Plaintiff" (Subject "C"), and "Miscellaneous" (Subject "D"). (*See id.*) The Interim Decision contains little information regarding the nature of, or issues presented with respect to, any of these "claims" or "subjects," and instead focuses on the Bais Din's decision on each. (*See id.*)

Regarding the Sharbat Claim, the Bais Din concluded that respondent Chaim Muskat "is presently obligated to pay Plaintiff the sum total of $277,469.00 US Dollars" (Arbitration Award, Subject A(1)), which amount is net of "credits awarded" as a result of certain loans from petitioner and/or his affiliated entities to defendant and/or his affiliated entities. (*See id.* and *id.*, Subject C.) The Bais Din further "authorize[d] Plaintiff to petition in civil court for a forensic investigation" within parameters specified in the Interim Decision and "[t]o subpoena Defendant to furnish access to Defendants' accounting records," in each case regarding revenues associated with "deals" made between "Defendants and Jonathan Spetner specifically relating to Life Insurance policies." (*Id.*, Subjects A(2) and A(3).) The Bais Din also authorized the issuance of a subpoena for "records to ascertain revenues received from policies of Erno Bodek," but did not

specify to whom this subpoena should or could be directed.
(*Id.*, Subject A(3).)

Additionally, the Bais Din expressly "retain[ed]
jurisdiction to review the information obtained through
discovery and . . . determine if any additional monies are owed"
(*id.*, Subject A(4)), as well as jurisdiction "to determine if
Plaintiff will be entitled to be compensated for any expenses
incurred in performing this discovery." (*Id.*, Subject A(5).)
Notably, the Bais Din did not specify the plaintiff (or
plaintiffs) entitled to the $277,469.00 sum or any potential
additional award. (*Id.*, Subjects A(1), A(4).) Nor did the Bais
Din specify the plaintiff (or plaintiffs) entitled to petition
for the aforementioned forensic investigation or issue the
aforementioned subpoenas. (*See id.*, Subjects A(2)-A(3).)

Regarding the "OCPI Claim," the Bais Din wrote that it
"d[id] not find it viable . . . to adjudicate the OCPI matters,"
but did not explain its reasons. (*Id.*, Subject B.) As to the
issue of "Defendant Loans to Plaintiff," the Bais Din concluded
that an unspecified plaintiff was "obligated to pay back loans
received from" an unspecified defendant, as well as to
"reimburse expenses that resulted from" an unspecified
plaintiff. (*Id.*, Subject C.) The Bais Din "calculated the
amount owed and . . . issued a credit" in resolving the "Sharbat

8

Claim" "to reflect this amount." (*Id.*) Finally, the Bais Din denied "[a]ll other claims already presented but not addressed in the [Interim Decision]," stated that a ruling on certain unspecified counterclaims would "be delivered at a later date," expressly "retain[ed] jurisdiction over all matters between the Parties," and granted the unspecified defendant ordered to pay money on account of the "Sharbat Claim" the "right to put the . . . money in escrow by the Bais Din . . . within 30 days of receiving th[e] [Interim Decision]." (Interim Decision, Subjects D(1)-D(3).)

## IV. Procedural History

As discussed above, petitioner commenced the instant action by filing the Confirmation Petition in the New York Supreme Court, Queens County on July 20, 2017 (*see* Confirmation Petition), and respondents removed the action to federal court on August 15, 2017. (*See* Notice of Removal.) At a pre-motion conference on September 11, 2017, the court granted the parties leave to file the instant cross-motions and set a briefing schedule, pursuant to which the Dismissal Motion was submitted to the court on October 16, 2017, and the Subpoena Motion was submitted to the court on October 18, 2017.

Respondents, who removed the case to federal court, assert that this court has jurisdiction over this action based on diversity of citizenship, and because the action presents a federal question. (Notice of Removal ¶¶ 1-2.) As set forth below, the court cannot determine whether complete diversity exists, but concludes that the Confirmation Petition presents a federal question.

## I.   Diversity Jurisdiction

Respondents assert that the court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(2), which, as relevant here, provides for federal jurisdiction where the amount in controversy exceeds $75,000, and the action is between "citizens of a State and citizens or subjects of a foreign state." Respondents note that the amount in controversy exceeds $75,000 and that petitioner is domiciled in Israel, and contend petitioner is a citizen of Israel and not the United States. (Notice of Removal ¶¶ 1, 17.) Additionally, and as discussed above, there is no dispute that respondent Chaim Muskat is a citizen of New York State; respondent Star Financial LLC is a New York limited liability company "based in Queens," New York; and respondent Sephardic Torah and Return Center, Inc. is a New York not-for-profit corporation also "based in Queens."

(Confirmation Petition ¶¶ 2-4; Notice of Removal ¶¶ 14-16.)  No
party, however, has provided any information regarding Star
Financial LLC's members or their citizenship.

Respondents' contention that petitioner is a citizen
solely of Israel and not the United States is based on
statements and omissions made by, or attributed to, petitioner
in other litigation matters.  To briefly summarize, respondents
assert that in various papers filed in several courts between
2008 and 2015, petitioner represented that he was a dual citizen
of the United States and Israel.  (*See* Notice of Removal ¶¶ 20-
37.)  Respondents further assert that in 2014, petitioner began
filing court papers that omitted any reference to United States
citizenship (*id.* ¶ 35), and in at least one instance, outright
asserted that he had no connection to New York or the United
States, and only Israeli law should apply to him.  (*Id.* ¶ 38.)

Petitioner, for his part, denies that there is any
basis for diversity jurisdiction in the instant action and
asserts that respondents' notice of removal "contains material
misrepresentations and distortions of fact regarding
[petitioner], his citizenship, and his positions and filings in
other litigations," but does not explain further.  (Petitioner's
Pre-Motion Conference Letter, ECF No. 11, at 1.)

As the parties seeking to invoke the court's diversity jurisdiction, it is respondents' burden to "demonstrate[e] that the grounds for diversity exist and that diversity is complete." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (citation omitted). Consequently, respondents must establish petitioner's citizenship, particularly because "United States citizens domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, so that [28 U.S.C.] § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Id.* at 322 (internal quotation marks and citation omitted). Additionally, because limited liability companies "take[] the citizenship of each of [their] members," *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (citation omitted), respondents must establish the citizenship of each member of respondent Star Financial, LLC in order to establish that the presence of Star Financial LLC as a respondent does not destroy diversity.

Although respondents have raised questions regarding petitioner's citizenship, however, they have not submitted any evidence affirmatively indicating that he does not hold United States citizenship. Further, respondents have submitted no information or evidence regarding the identity or citizenship of

the members of respondent Star Financial, LLC.  Consequently,

based on the current record, the court cannot conclude that

complete diversity exists, and therefore cannot conclude it has

diversity subject matter jurisdiction over the instant action

under 28 U.S.C. § 1332(a)(2).  Because the court concludes that

the instant action presents a federal question, however, the

court need not determine whether jurisdictional discovery is

appropriate.

## II.  Federal Question Jurisdiction

Respondents also assert that the instant action

presents a federal question pursuant to the United Nations

Convention on the Recognition and Enforcement of Foreign

Arbitral Awards (the "New York Convention"), 21 U.S.T. 2517, and

the New York Convention's implementing statute, chapter two of

the FAA.  9 U.S.C. §§ 201-08; *see also Scherk v. Alberto-Culver

Co.*, 417 U.S. 506, 520 n.15 (1974) (noting that Congress enacted

chapter two of the FAA to implement the New York Convention).

Accordingly, respondents assert that the court has jurisdiction

over the instant action pursuant to 28 U.S.C. § 1331.

Petitioner "does not contest" that the court has jurisdiction

over the instant action under the New York Convention

(Petitioner's Pre-Motion Conference Letter, ECF No. 11, at 1),

and himself affirmatively invokes the court's jurisdiction
through the Subpoena Motion.

Section 203 of the FAA provides that "[a]n action or
proceeding falling under the [New York] Convention shall be
deemed to arise under the laws and treaties of the United
States," and "[t]he district courts of the United States . . .
shall have original jurisdiction over such an action or
proceeding, regardless of the amount in controversy."  9 U.S.C.
§ 203.  "[A]ctions or proceedings that fall under the New York
Convention include arbitration agreements or arbitral awards
arising out of a legal relationship . . . which is considered as
commercial between any parties, unless both parties are citizens
of the United States and that relationship involves neither
property located abroad, nor envisages performance or
enforcement abroad, nor has some other reasonable relation with
one or more foreign states."  *CBF Industria de Gusa S/A v. AMCI
Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017) (internal
quotation marks and citation omitted), *cert. denied*, 138 S. Ct.
557 (2017); *accord* 9 U.S.C. § 202; *see also Yusuf Ahmed Alghanim
& Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997*)*
(citing approvingly Seventh Circuit's conclusion in *Jain v. de
Méré*, 51 F.3d 686, 689 (7th Cir. 1995) that "any commercial
arbitral agreement, unless it is between two United States

citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the [New York] Convention").

As discussed above, the instant action involves both an interim arbitration agreement (*i.e.*, the Arbitration Agreement), and an arbitral award (*i.e.*, the Interim Decision), in each case arising out of a legal relationship between petitioner and respondents. Further, both the Arbitration Agreement and Interim Decision makes clear that they relate to "OCPI shares" (Arbitration Agreement; Interim Decision, Subject B), which respondents explain are shares an entity named Oral Cancer Prevention International. (Notice of Removal ¶ 8.) The Interim Decision also refers to "deals made," life insurance policies, and loans from an unspecified defendant (*i.e.*, an affiliate of respondents') to an unspecified plaintiff (*i.e.*, an affiliate of petitioner's). (Interim Decision, Subjects A3 and C.) These references to shares in an entity, "deals," life insurance policies, and loans arising in the course of dealing between petitioner and his affiliates and respondents and their affiliates establish that the parties' relationship can be "considered as commercial." *CBF Industria de Gusa*, 850 F.3d at 71.

Additionally, although petitioner's citizenship is not clear, there is no dispute that he is domiciled in Israel, and both the Arbitration Agreement and the Interim Decision make clear that the parties to the arbitration agreed to adjudicate all controversies between the parties. (*See* Arbitration Agreement ¶ 1 ("W[e], the undersigned (Parties), hereby agree to submit to binding arbitration *all the controversies* . . . between the undersigned Parties." (emphasis added)); Interim Decision ("[T]he above Parties authorized this Bais Din . . . to adjudicate . . . without limitation, all the controversies that exist between the parties.")).)

Consequently, the Arbitration Agreement and Interim Decision "envisage[] performance," and possibly property and "enforcement abroad," and have a "reasonable relationship" to a foreign state, specifically Israel. *CBF Industria de Gusa*, 850 F.3d at 71 (quoting 9 U.S.C. § 202). Accordingly, the court concludes that the instant action presents a federal question under sections 202 and 203 of the FAA, 9 U.S.C. §§ 202-03, and that the court has jurisdiction pursuant to 28 U.S.C. § 1331.

## DISCUSSION

## I. Respondent's Dismissal Motion

Respondents move to dismiss the Confirmation Petition on the grounds that this court "has no subject matter

jurisdiction to confirm th[e] non-final and indefinite" Interim

Decision, that petitioner "failed to join necessary and

indispens[a]ble parties," and that petitioner "has not

sufficiently alleged that the . . . Interim Decision was

delivered" or "the existence of the parties' arbitration

agreement, and because there are genuine issues of material

fact." (Resp. Mem. at 1.) For the reasons set forth below, the

court concludes that the Interim Decision is not a final award,

and therefore the court lacks authority to confirm it.

### A. Applicable Law

As discussed above, petitioner commenced this action

seeking confirmation of the Interim Decision. Because the

Maysharim Rabbinical Court, from which the Bais Din issued the

Interim Decision, is situated within the United States, the

Interim Decision constitutes an arbitral award "made" in the

United States, and is a "nondomestic" arbitral award for

purposes of the New York Convention. *See CBF Industria de Gusa*,

850 F.3d at 73 ("[A] nondomestic arbitral award is an award that

is 'made' in the United States because the parties agreed to

arbitrate before an arbitrator in the United States, but which

nonetheless falls under the New York Convention and Chapter 2 of

the FAA." (citation omitted)). "Under the New York Convention,

the country in which the award is made is said to have primary

17

jurisdiction over the arbitration award." *Id.* at 71 (internal quotation marks, citations, and emphasis omitted). Accordingly, this court "sits in primary jurisdiction" over the Interim Decision in this action. *Id.* at 73 (citation omitted).

Further, because the Interim Decision falls under the New York Convention and the court sits in primary jurisdiction, the New York Convention and the FAA, and not New York State law, govern confirmation. *See* 9 U.S.C. §§ 202 (defining scope of New York Convention), 207 (providing that the district court "shall confirm" an award "falling under the [New York] Convention . . . unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention"); *see also CBF Industria de Gusa,* 850 F.3d at 73 ("Under its primary jurisdiction in a confirmation proceeding, the district court is . . . 'free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief.'" (quoting *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23)); *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 21(indicating that the FAA constitutes "domestic arbitral law" pursuant to which a district court sitting in primary jurisdiction may set aside or vacate arbitral award).

As the Second Circuit observed in a case involving confirmation of a nondomestic New York Convention award over which the district court sat in primary jurisdiction, "[t]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court[,] [t]he review of arbitration awards is very limited[,] . . . [and] [a]ccordingly, the showing required to avoid summary confirmance is high." *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 23 (internal quotation marks and citations omitted).

Under the New York Convention, however, "district courts lack authority to confirm arbitral awards that are not final awards." *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d 327, 336 (S.D.N.Y. 2014) (citing *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980); and *Daum Global Holdings Corp. v. Ybrant Digital Ltd.*, No. 13-CV-3135(AJN), 2014 WL 896716, at *2 (S.D.N.Y. Feb. 20, 2014)). "[A]n award is final if it resolves the rights and obligations of the parties definitively enough to preclude the need for further adjudication with respect to the issue submitted to arbitration." *Id.* (citing *Rocket Jewelry Box, Inc. v. Noble Gift Packaging*, 157 F.3d 174, 176 (2d Cir. 1998)).

Thus, "[a]n award that finally and conclusively disposes of a 'separate independent claim' may be confirmed even if it does not dispose of all the claims that were submitted to arbitration." *Kerr-McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991) (citation omitted); *see also Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (finding arbitration awards final and confirmable where they "require[d] specific action and d[id] not serve as a preparation or a basis for further decisions by the arbitrators").

### B.    Application

The Second Circuit's decision in *Kerr-McGee Refining Corporation v. M/T Triumph*, 924 F.2d 467 (2d Cir. 1991), is instructive on the confirmation or enforcement of a final arbitral award.  There, and in relevant part, an "arbitration panel issued a Partial Final Award in favor of Kerr-McGee for the value of cargo short delivered, together with interest," but "deferred decision on a number of other issues, including Kerr-McGee's RICO claim, its alternative claim for punitive damages, and its claim for attorneys' fees and costs." *Id.* at 469.  The Second Circuit concluded that "the Partial Final Award did not finally dispose of a separate independent claim" because "the arbitration panel expressly left open whether, as a result of [the complained-of conduct], Kerr-McGee was also entitled to

punitive or RICO damages, costs and attorneys' fees." *Id.* at

471. Thus, the interim award in *Kerr-McGee Refining* "merely

decided the issue of liability and partial damages . . . and did

not finally dispose of an independent claim because it left open

the question of damages." *Id.* (citing *Michaels*, 624 F.2d at

414).

Petitioner nevertheless contends that the court should

confirm the Interim Decision because, by agreeing to the

Arbitration Agreement, which empowers the arbitral tribunals to

"issue such intermediate decisions or orders as they deem

necessary," respondents "waived their rights to any finality

requirement." (Pet. Opp. at 3 (quoting Arbitration Agreement).)

This argument is without merit. Petitioner does not cite, and

the court cannot locate, any authority for the proposition that

language in an arbitration agreement empowering an arbitral

tribunal to issue intermediate decisions and requiring that

parties comply with those decisions renders all intermediate

decisions "final" and confirmable.

Further, although certain authority suggests that

where parties agree to an arbitral tribunal's partial final

determination as to certain issues, the resulting partial final

award is "final" for purposes of confirmation, these cases have

involved express bifurcation of issues (for instance, an express

agreement to make liability and damages separate and independent claims). *See Employers' Surplus Lines Ins. Co. v. Glob. Reinsurance Corp.-U.S. Branch*, No. 07-CV-2521(HB), 2008 WL 337317, at *5 (S.D.N.Y. Feb. 6, 2008) (citing *Goldman v. Architectural Iron Co.*, No. 01-CV-8875(DLC), 2001 WL 1705117, at *3-4 (S.D.N.Y. Jan. 15, 2001) and *Doreen v. Bldg. Material Local Union 282*, 250 F.Supp.2d 107, 112-13 (E.D.N.Y. 2003)); *see also Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) ("[I]f the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so.").

Here, by contrast, the parties merely consented to the "issu[ance] [of] such intermediate decisions or orders as [the arbitral tribunal may] deem necessary." (Arbitration Agreement ¶ 2.) This language leaves undefined the nature and scope of any potential "intermediate" decisions, and is silent as to whether the parties intended for any "intermediate" decision to be final as to any issue or issues. Thus, the parties "did not ask . . . [for] an immediate determination of [any discrete issue or issues] or otherwise to bifurcate the proceedings, nor did the [arbitral tribunal] give them any prior indication that [it] would defer the issue of [additional] damages to a later date." *Employers' Surplus Lines*, 2008 WL 337317, at *5.

Accordingly, the court cannot conclude that the Interim Decision constitutes a final award by virtue of any agreement to submit to a partial final determination.

In the Interim Decision, with respect to the "Sharbat Claims," the Bais Din expressly left open the possibility that "additional monies," as well as certain expenses, might be awarded to the plaintiffs in the arbitration following discovery. (*See* Interim Decision, Subject A(4) ("Bais Din retains its jurisdiction to review the information obtained through discovery and . . . determine if any additional monies are owed."); Subject A(5) ("Bais Din retains the jurisdiction to determine if Plaintiff will be entitled to be compensated for any expenses incurred in performing this discovery.").) In addition, the Interim Decision decided that, with regard to the "Sharbat Claims," defendant Muskat was "presently obligated" to pay the amount of $277,469.00 to an unspecified plaintiff. (*Id.*, Subject A(1).) Further, the Interim Decision decided with regard to "Defendant Loans to Plaintiff," that plaintiff was obligated to pay back an unspecified amount of loans from defendant, calculated the amount owed by plaintiff to defendant, and issued a credit on the amount owed by defendant Muskat to plaintiff. (*See* Interim Decision, Subject C ("The Bais Din has

calculated the amount owed and has issued a credit in [Subject] A1 to reflect this amount.").)

The foregoing aspects of the Interim Decision make clear that, with respect to the "Sharbat Claims" and the "Defendant Loans to Plaintiff," the Interim Decision "serve[s] as a preparation or a basis for further decisions by the arbitrators," *Zeiler*, 500 F.3d at 169, as it "merely decided the issue of liability and partial damages." *Kerr-McGee Refining*, 924 F.2d at 471. The Interim Decision "expressly left open" the possibility of a further award, *id.*, specifically, an award of damages and/or discovery expenses. Accordingly, the court concludes that the Interim Decision, like the partial final award at issue in *Kerr-McGee Refining*, does not constitute a "final award."

As to the remaining "subjects" addressed in the Interim Decision, the Bais Din expressly found that it was "not . . . viable" to adjudicate the "OCPI Claim." (Interim Decision, Subject B.) Consequently, this branch of the Interim Decision is not an award, much less a final award, as it does not in any way resolve any issue submitted to arbitration.

Regarding "Miscellaneous" subjects, the Bais Din wrote in the Interim Decision that "[a]ll other claims already presented but not addressed in the above are hereby denied. A

ruling on the counterclaims will be delivered at a later date."
(Interim Decision, Subject D(1).)  At minimum, the Interim
Decision is not final as to "the counterclaims" because it
expressly states that a "ruling . . . will be delivered at a
later date."  This same logic applies to "[a]ll other claims" if
the Bais Din used the terms "[a]ll other claims" and "the
counterclaims" interchangeably.

Finally, if "[a]ll other claims" refers to claims
other than "the counterclaims," the Interim Decision is not
confirmable as to the "other claims" on the present record.  As
stated above, the FAA's confirmation provisions apply to the
instant action because the court sits in primary jurisdiction
over the Interim Decision.  Under the FAA, the court must
confirm an arbitration award if "there is 'even a barely
colorable justification for the outcome reached.'"  *Willemijn*
*Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103
F.3d 9, 13 (2d Cir. 1997) (quoting *Matter of Andros Compania*
*Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d
Cir. 1978)).  Absent some indication as to what the "other
claims" denied in the Interim Decision are, however, the court
is without a basis to determine whether any justification
whatsoever exists for confirmation of the Interim Decision.

Accordingly, the court concludes that the Interim Decision is not a final award or, solely with respect to the "other claims" referenced in Subject D, not confirmable on the present record, and consequently, the Confirmation Petition must be dismissed.[3]  This dismissal is without prejudice to petitioner's ability to seek confirmation of a final award resting on the Interim Decision if and when such an award is issued.  Further, in light of this conclusion, the court need not address respondents' remaining arguments in the Dismissal Motion.

## II.  Petitioner's Subpoena Motion

Petitioner seeks to enforce an arbitration subpoena under section 7 of the FAA.  (Pet. Mem. at 2.)  As relevant here, the subpoena that petitioner seeks to enforce is signed by petitioner's counsel and purports to require that respondent Chaim Muskat "produce [certain] documents for inspection and copying" at the office of petitioner's counsel.  (Subpoena, Sarfaty Subpoena Decl., Ex. C, ECF No. 18-3, ECF pp. 8-13, at 1, 5.)

---

[3]    The court declines to afford petitioner the opportunity to supplement the record regarding the "other claims" referred to in the Interim Decision because nothing in the Confirmation Petition or in petitioner's briefing indicates that petitioner has any particular interest in having the Interim Decision's disposition of "other claims" confirmed.  Instead, petitioner's focus has been on the portion addressing the "Sharbat Claims."  (*See* Confirmation Petition ¶¶ 9-10 (describing overall import of Interim Decision but not referring to "other claims"); Pet. Opp. at 1-6 (containing no reference to "other claims").)

## A. Applicable Law

Chapter one of the FAA "applies to actions and proceedings brought under . . . chapter [two] to the extent that chapter [one] is not in conflict with . . . chapter [two] or the [New York] Convention."  9 U.S.C. § 208.  Section 7 of the FAA therefore applies to this proceeding, as it is codified in chapter one and does not conflict with the New York Convention or chapter two of the FAA.  Section 7 provides, in relevant part, that

> [t]he arbitrators selected either as prescribed
> in this title or otherwise, or a majority of
> them, may summon in writing any person to attend
> before them or any of them as a witness and in a
> proper case to bring with him or them any book,
> record, document, or paper which may be deemed
> material as evidence in the case. . . . Said
> summons shall issue in the name of the arbitrator
> or arbitrators, or a majority of them, and shall
> be signed by the arbitrators, or a majority of
> them, and shall be directed to the said person
> and shall be served in the same manner as
> subpoenas to appear and testify before the court.

9 U.S.C. § 7.

As the Second Circuit has observed, section 7 of the Federal Arbitration Act "explicitly confers authority only upon *arbitrators*; by necessary implication, the *parties* to an arbitration may not employ this provision to subpoena documents or witnesses."  *Nat'l Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 187 (2d Cir. 1999) (emphasis in quoted

material) (citations omitted).  The Second Circuit has also

concluded that "[t]he language of section 7 is straightforward

and unambiguous. Documents are only discoverable in arbitration

when brought before arbitrators by a testifying witness." *Life

Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d

210, 216 (2d Cir. 2008).

## B.  Application

Here, it is abundantly clear that a party to

arbitration, not the arbitral panel itself, seeks to invoke

section 7 of the FAA.  Further, petitioner seeks to invoke

section 7 to compel the production of documents for inspection

at his counsel's office, not to have them brought before the

arbitral tribunal by a witness.

Petitioner nevertheless asserts that the subpoena was

issued "in the name of the Arbitration Panel" (Pet. Mem. at 3;

*see also* Sarfaty Subpoena Decl. ¶ 7).  Even if petitioner could

employ section 7 "in the name of" the arbitral tribunal, the

Second Circuit has made abundantly clear that under section 7,

"[d]ocuments are only discoverable in arbitration when brought

before arbitrators by a testifying witness." *Life Receivables

Trust*, 549 F.3d at 216.  Thus, the petitioner's Subpoena Motion

must be denied because petitioner seeks to compel the delivery

of documents to his counsel, instead of having a testifying

witness to bring the documents before the arbitral tribunal.
(Subpoena at 1.)  The parties' Arbitration Agreement provides,
in relevant part, "that the Arbitrators shall be empowered to
issue subpoenas for witnesses and the production of documents."
(Arbitration Agreement at ¶ 2.)

Plaintiff cites no authority indicating that a party
to arbitration may invoke section 7 "in the name of" an arbitral
tribunal.  Other than section 7 of the FAA itself, the only
authorities to which petitioner cites are *Sexton v. Cavalier*, 11
F. Supp. 3d 439 (S.D.N.Y. 2014) and *Complaint of Koala Shipping
& Trading Inc.*, 587 F. Supp. 140 (S.D.N.Y. 1984) (Pet. Mem. at
2), but these cases are inapposite.

More specifically, in *Sexton*, an arbitral tribunal
itself issued a document subpoena.  *See Sexton*, 11 F. Supp. 3d
at 440 (noting that "at Plaintiff's request, the Arbitral
Tribunal . . . issued a non-party subpoena" seeking to obtain
certain documents in connection with an arbitration).  Thus,
*Sexton* in no way supports plaintiff's suggestion that a party to
arbitration may employ section 7 of the FAA "in the name of" an
arbitral tribunal.

*Complaint of Koala* involved a more complex posture,
but nevertheless, like *Sexton*, fails to support petitioner's
position.  There, a party to parallel arbitration and a federal

29

court proceeding relating to the parties' relative liability and limitation of liability, respectively, "sought to have a subpoena duces tecum issued and a discovery order executed by the panel of arbitrators." 587 F. Supp. at 141-42. The arbitral tribunal convened and "stated that it was 'unsure' of its power and suggested to [the party] that it present the same application to [the district court]." *Id.* at 142. The party complied with the panel's suggestion.

The district court, in relevant part, concluded that section 7 of the FAA "authorizes arbitrators to subpoena individuals and documents and . . . the material sought [wa]s relevant to the issues before the arbitrators," and in any event, the discovery was within the scope of the parallel action before the district court. 587 F. Supp. at 142-43. The district court also noted that it saw "no purpose" in sending the subpoena application "back to the panel," but that "[i]n the future, the panel should exercise its power" pursuant to section 7 of the FAA. *Id.* Thus, *Complaint of Koala* is marked by two critical aspects not present here: first, the party seeking discovery properly applied to the arbitral tribunal for the issuance of a subpoena and execution of a discovery order, and second, an independently sufficient basis existed for the district court to order the discovery sought.

The Arbitration Agreement is clear: the arbitrators (not the parties) are empowered to issue subpoenas for witness testimony and documents. (Arbitration Agreement ¶ 2.) Absent any authority indicating that a party to arbitration may employ section 7 of the FAA "in the name of" an arbitral tribunal, the court applies the plain language of section 7, which is "straightforward and unambiguous," *Life Receivables Trust*, 549 F.3d at 216, and "explicitly confers authority only upon arbitrators" themselves, and not parties to an arbitration, to "employ [section 7] to subpoena documents or witnesses." *Nat'l Broadcasting Co.*, 165 F.3d at 187 (emphasis omitted). Accordingly, through the Subpoena Motion, petitioner seeks relief from this court that is unavailable to him under the FAA, and the Subpoena Motion is denied.

## **CONCLUSION**

For the foregoing reasons, the respondents' Motion to Dismiss is GRANTED to the extent that the Confirmation Petition is DISMISSED, without prejudice to petitioner's ability to file a confirmation petition upon entry of a final arbitral award in the underlying arbitration pursuant to the Arbitration Agreement. Petitioner's Subpoena Motion is DENIED. The Clerk

of Court is respectfully directed to enter judgment dismissing
this action and to close the case.

**SO ORDERED.**

Dated:   September 27, 2018
           Brooklyn, New York

_____/DRAFT/_____
Kiyo A. Matsumoto
United States District Judge
